**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MARY BETH BELDA,** | ) | |
| **PLAINTIFF,** | ) | **CASE NO. 15- CV-07544** |
| | ) | **Judge Der-Yeghiayan** |
| | ) | **Magistrate Judge Martin** |
| **Vs.** | ) | |
| | ) | |
| **FEDERAL HOME LOAN** | ) | |
| **MORTGAGE CORPORATION,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

**DEFENDANT FEDERAL HOME LOAN MORTGAGE
CORPORATION'SMEMORANDUM IN SUPPORT OF REMOVAL TOFEDERAL
COURT AND THIS COURT'S EXERCISE OF JURISDICITION**

Defendant, Federal Home Loan Mortgage Corporation ("Freddie Mac"), by and through
its attorney, Pierce & Associates, P.C., hereby submits this Memorandum in support of its notice
of removal to federal court and in support of this Court's exercise of jurisdiction in this case.
Freddie Mac has an unfettered right to remove this case pursuant to 12 U.S. C. §§ 1452(f) and
1441(b). The Court should exercise its jurisdiction over this case because the *Rooker-Feldman*
Doctrine does not apply.

**BACKGROUND**

This case arises from the unfortunate but sometimes necessary circumstances in which
Freddie Mac must attempt to recover its losses from mortgage loans or securities collateralized
by such loans that it purchased in the secondary market mortgage pursuant to its federal charter.
Congress chartered Freddie Mac in 1970 with a public mission to stabilize the Nation's

residential mortgage markets and expand opportunities for homeownership across the country. *See* 12 U.S.C. § 1451 note. Specifically, Congress created Freddie Mac "to provide ongoing assistance to the secondary market for residential mortgages" and "to promote access to mortgage credit throughout the Nation." *Id*. Congress also directed Freddie Mac to focus on making homeownership more accessible to "low- and moderate-income families," as well as individuals living in "central cities, rural areas, and underserved areas." *Id.* § 1451 note.

Freddie Mac's role in the secondary mortgage market is critical to ensuring that sufficient capital exists across the Nation for lenders to make mortgage loans to prospective homeowners in Illinois and elsewhere. And, because Freddie Mac's business deals with mortgages, foreclosure is an integral part of this process. The existence of efficient foreclosure processes, including that related to the management of real-estate owned properties following foreclosure, ultimately affects Freddie Mac's ability to carry out its congressionally mandated mission to support the Nation's housing market because such processes minimize the impact of defaults on Freddie Mac's ability to provide mortgage capital throughout the Nation.

Freddie Mac depends on its customers—predominately lenders and loan servicers in the primary mortgage market—to service the loans that it buys. In addition to invoicing borrowers and collecting mortgage payments, servicers also work to remediate delinquent loans and, if necessary, initiate foreclosures. In the event a borrower defaults on his mortgage, Freddie Mac encourages the servicers to intervene early to evaluate alternatives to foreclosure. Foreclosure is, indeed, a last resort. But the unfortunate reality is that suitable solutions may not be found in every instance to help homeowners stay in their homes. Foreclosures therefore must occur efficiently to ensure that Freddie Mac recovers as much of its investment as possible, and as quickly as possible, to minimize the impact of defaults on Freddie Mac's ability to assist with the

2

continued flow of capital into the mortgage market. This necessarily means that the management of properties following foreclosure must be cost-effective and efficient so as to minimize Freddie Mac's ultimate losses deriving from defaults.

### A. Foreclosure Action

In this case, Provide Funding Associate, L.P. ("Provident"), was the servicer on a mortgage loan secured by property commonly known as 4925 North Drake Avenue, Chicago, Illinois 60625 (the "Property"). Freddie Mac owned the mortgage loan secured by the Property. On May 26, 2011, Provident filed a Complaint to Foreclose Mortgage (the "Foreclosure Action") against Jose Paredes a/k/a Jose A. Paredes; Rosario Paredes; Capital One Bank (USA), N.A.; Unknown Owners and Non-Record Claimants in the Circuit Court of Cook County, Illinois as Case No. 11 CH 19138. On April 15, 2013, a Judgment for Foreclosure and Sale was entered in the Foreclosure Action in the amount of $384, 448.76. Jose A. Paredes and Rosario Paredes filed a bankruptcy action in the Northern District of Illinois on July 16, 2013, Case No. 13-28525 (the "Bankruptcy"), and was granted a discharge on November 27, 2013. Within the Bankruptcy, Jose A. Paredes and Rosario Paredes set forth they only received $3,000 in rental income for the year 2011 and that they did not receive any rental income for the years 2012 and 2013. On September 19, 2013, an Order Modifying Stay was entered in the Bankruptcy to Provident to proceed with the foreclosure of the mortgage loan on the Property. On November 20, 2013, the Property was sold at a judicial sale to Provident for the sum of $235,000.00. On April 17, 2014, a Judicial Sale Deed was recorded transferring title to the Property to Freddie Mac.

**B. Freddie Mac's Efforts to Secure Possession of the Property**

On March 4, 2014, Freddie Mac sent a "Keep Chicago Renting Notice" and a "Freddie Mac Solicitation Letter" to Mary Beth Belda, the Plaintiff in this Action. *See Affidavit of Lena Wnek*, attached hereto as Exhibit 1 and incorporated herein by reference. On April 29, 2014, a Freddie Mac "Options Package" was mailed to Plaintiff. *Id.* On May 1, 2014, Lena Wnek was contacted by Plaintiff and Plaintiff requested she be paid $10,600.00. *Id.* Ms. Lena Wnek advised Plaintiff that since she was offered a lease extension, Plaintiff was not eligible for the $10,600.00. *Id.* Plaintiff presumably made her request for $10,600 pursuant to the City of Chicago Protecting Tenants at Foreclosure Ordinance (the "Ordinance"),[1] which purports to discourage rental properties from becoming vacant following foreclosure. 5-14-010.

**C. State Court Action**

Despite full compliance with all regulations and applicable ordinances and statutes, Plaintiff filed a complaint in the Circuit Court of Cook County, Case No. 2014-L-011867, against Federal Home Loan Mortgage Corporation on November 14, 2014, asserting a claim for violation of 5-14-050 and 5-14-070 of the City of Chicago's Protecting Tenants at Foreclosure Ordinance. On June 22, 2015, the Court ordered the parties to serve both oral and written discovery on or before July 6, 2015. Freddie Mac also filed a response to the complaint on July 6, 2015, but Plaintiff moved to strike Freddie Mac's pleading on July 17, 2015, which the state court granted on July 22, 2015. The state court did not, however, vacate its June 22 order regarding discovery, and Freddie Mac thus moved forward with serving a notice of deposition upon Plaintiff and issuing Subpoenas for Deposition as to Jose Paredes and Rosairo Paredes (the

---

[1] The Ordinance requires the owners of a foreclosed rental property to either pay a one-time relocation assistance fee of $10,600 or offer the tenant the option to renew or extend the tenant's "current rental agreement." 5-14-010.

4

former Property owners).  Plaintiff was deposed on July 24, 2015, and just over a week later, Plaintiff filed a motion for leave to file an amended complaint, which was granted on August 13, 2015.

Plaintiff's Amended Complaint alleged that Freddie Mac violated sections 5-14-050 and 5-14-070 of the City of Chicago's Protecting Tenants at Foreclosure Ordinance (the "Ordinance") as well as section 5-12-030 of the City of Chicago "Residential Landlords and Tenants Ordinance" (the "RLTO").  Plaintiff is seeking recovery of the following: 1) $10,600 relocation fee; 2) $21,200 penalty; 3) attorneys' fees; 4) $1,000 for security deposit; and 5) $2,000 penalty.

By agreement of the parties, and Order of Court entered on August 13, 2015, Freddie Mac's response to the Amended Complaint was to be filed no later than September 3, 2015. Rather than litigate these newly filed claims in state court, however, Freddie exercised its absolute right to remove this action to federal court, filings its notice of removal on August 27, 2015 – just 13 days after Plaintiff filed the Amended Complaint.

Unbeknownst to Freddie Mac, Plaintiff moved for and obtained an entry of an order of default on August 26, 2015[2] – one day prior to the filing of the notice of removal and 8 days prior to the deadline to respond to the Amended Complaint.  On August 28, 2015, Freddie Mac filed a motion for extension of time to file an answer or otherwise plead on August 28, 2015, prior to its discovery of the state court August 26, 2015 order of default.  On August 31, 2015, Freddie Mac then moved to vacate the order of default on the grounds that, *inter alia*, the order of default is void.  *See,* Doc. Nos. 9 & 10.  The Court has not yet ruled on the motions.

---

[2]  The order of default was entered at a status hearing that occurred on August 26, 2015, which was scheduled prior to the filing of the Amended Complaint.  However, counsel for the parties previously discussed the need to schedule a new date for a status conference with the filing of the Amended Complaint, and the State court entered an order setting Freddie Mac's deadline to file a response to the Amended Complaint to September 3, 2015.

**ARGUMENT**

**I.      Freddie Mac's Notice of Removal was proper.**

Freddie Mac has an absolute right to remove this case to federal court pursuant to the plain language of Freddie Mac's federal charter, which provides, in relevant part:

> Notwithstanding . . . any other provision of law, (1) the Corporation shall be deemed to be an agency included in sections 1345 and 1442 of such Title 28; (2) all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district court of the United States shall have original jurisdiction of all such actions, without regard to amount or value; and (3) any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which the Corporation is a party may at an time before the trial thereof be removed by the Corporation, without the giving of any bond or security . . . .

12 U.S.C. § 1452(f).  It is undisputed that Freddie Mac is the named defendant in this case and that no trial has taken place in the state court proceedings.  Although Freddie Mac attempted to file an answer to the original complaint and conducted limited discovery pursuant to state court order, Freddie Mac in no way waived its right to remove this case.  *See Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin. Agency, No. Civ. A. 04-4770, 2005 WL 44524,* at *6 (E.D.Pa.Jan. 10, 2005) ("[T]he statutory language in § 1452(f) confers federal jurisdiction over an entire action to which Freddie Mac is a party. A common reading of the language 'all civil actions to which [Freddie Mac] is a party' suggests that jurisdiction extends to the entire suit."); *see also Spring Garden Assocs. L.P. v. Resolution Trust Corp.,* 26 F.3d 412, 415-16 (3d Cir. 1994) (interpreting a statute nearly identical to § 1452(f) and finding that its language conferring "original federal jurisdiction over 'any action, suit or proceeding to which [Freddie Mac] is a

party," "encompasses the entirety of any case to which the Freddie Mac is a party and not just those claims in such a case brought by or against the Freddie Mac.").

Plaintiff successfully moved to strike Freddie Mac's original answer pleading, and in any event subsequently filed an amended complaint after the parties conducted limited discovery. Courts routinely exercise jurisdiction over cases that have been removed to federal court, even after limited proceedings are conducted before the state court. *See Huntingdon Valley Condo. Ass'n v. Pa. Hous. Fin. Agency,* No. Civ.A. 04-4770, 2005 WL 44524, at*6 (E.D.Pa. Jan.10, 2005). Here, very limited proceedings were had in the state court proceeding, which culminated in the filing of an Amended Complaint by Plaintiff. Notwithstanding Plaintiff's efforts to usurp Freddie Mac's period to answer the Amended Complaint, Freddie Mac filed its notice of removal just thirteen (13) days later. Accordingly, Freddie Mac's removal of this action was proper and the Court should exercise its original jurisdiction over this case.

## II. The Rooker-Feldman Doctrine does not bar the exercise of federal court jurisdiction.

The *Rooker-Feldman* Doctrine provides that federal district courts are precluded from exercising jurisdiction over claims that would require review of a final state court judgment. *Rooker v. Fld. Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L.Ed. 362 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed.2d 206 (1983); *Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed. 2d 1059 (2006). The *Rooker-Feldman* doctrine is a "narrow doctrine" that "applies only in limited circumstances." *Lance*, 546 U.S. at 464-66. Specifically, the Supreme Court has held that the *Rooker-Feldman* doctrine's application is solely in cases where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking

7

review and rejection of that judgment." *Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed. 2d 454 (2005).

The *Rooker-Feldman* doctrine does not apply to the instant case because no final judgment was entered by the state court. The state court's order of default was erroneously entered and is voidable, as the record is clear that Freddie Mac's response to the Amended Complaint was not due until September 3, 2015. As set forth more fully in Freddie Mac's Motion to Set Aside Judgment, this Court has the authority to set aside the order of default pursuant to Federal Rule of Civil Procedure 60. Moreover, the Order does not constitute a final judgment because the state court continued the case to a later date for a determination of damages. *See,* August 26, 2015 Order attached hereto and incorporated herein by reference. *See, Lusk v. Bluhm*, 53 N.E.2d 135 (App. Ct. 2nd Dist. 1944); *See also Gold Kist v. Laurinburg Oil Co. Inc.,* 756 F.2d 14 (3rd Cir. 1985). The *Rooker–Feldman* doctrine simply does not apply here and does not bar the Court's exercise of its jurisdiction over this case.

## CONCLUSION

For the reasons stated, the Court should retain jurisdiction in this case as the notice of removal by Freddie Mac, the named Defendant in this case, is proper and the *Rooker-Feldman* Doctrine does not bar the removal in this case.

Dated: October 6, 2015

FEDERAL HOME LOAN MORTGAGE CORPORATION,

By: /s/  Joanna M. Hughes
          One of Its Attorneys

Joanna M. Hughes
Pierce & Associates, P.C.
Attorney for Defendant
One North Dearborn, Suite 1300
Chicago, Illinois 60602
Telephone 312.476.5184
Fax Number 312.476.5185
Joanna.hughes@pierceservices.com